|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT TACOMA | |
| BRENDA C. NAILOR,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security Administration,<br><br>　　　　　　　　　Defendant. | CASE NO.  C09-5524RJB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for May 21, 2010 |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court remand the matter to the administration for further consideration.

<u>INTRODUCTION AND PROCEDURAL HISTORY</u>

When a Plaintiff presents prima facie evidence of a severe impairment at step two, the ALJ should do further analysis before determining that plaintiff is not disabled.  Here, despite prima facie evidence that plaintiff suffered from hand and wrist problems and from depression,

REPORT AND RECOMMENDATION - 1

the ALJ dismissed these impairments as "not severe" at step two without going through any additional analysis regarding how these may impact her disability.  Therefore, this court recommends that the case be remanded so that the ALJ can complete the analysis of these additional impairments to determine whether these impact her disability.

Plaintiff, Brenda Nailor, was born in 1958.  Tr. 253.  She completed high school and one year of college.  Tr. 95.  She has work experience in a number of positions at a paper mill from 1985 through early 2004.  Tr. 96-103.  She injured her back on the job in December 1989, requiring a change in her position at the mill from the finishing room to the technical department.  Tr. 96.  She suffered another on the job injury while working as a material handler.  *Id*.

On December 27, 2005, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning February 23, 2004, due to low back, neck and shoulder injury, depression, sleep disturbance, and wrist injury.  Tr. 20, 63-65.  The claim was denied initially and on reconsideration.  Tr. 20.  Plaintiff filed a timely written request for hearing before an administrative law judge (ALJ).  Tr. 20.  An ALJ conducted the hearing on April 3, 2008.  Tr. 20, 413-53.  Plaintiff testified, along with an impartial vocational expert.  Tr. 413-53.  On June 13, 2008, the ALJ issued her decision, finding that plaintiff had severe impairments but retained the residual functional capacity to perform her past relevant work as a paper tester and as a finishing machine operator.  Tr. 32-33.  Accordingly, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act from her alleged disability onset date, February 23, 2004, through the date of the ALJ's decision.  Tr. 33.

Plaintiff requested review of the ALJ's decision and submitted additional medical records.  Tr. 3A, 15-16, 398-412.  On July 24, 2009, the Administration's Appeals Council issued a notice indicating that it had considered the contentions raised and the additional

REPORT AND RECOMMENDATION - 2

evidence, but found that it did not provide a basis for changing the ALJ's decision and denied review, making the ALJ's decision the final administrative decision. 20 C.F.R. §§ 404.981, 422.210 (2009).

Plaintiff now seeks judicial review of the ALJ's decision. She specifically alleges: (1) the ALJ failed to properly evaluate plaintiff's "severe impairments" at step-two; (2) the ALJ failed to provide sufficient reasons to discredit plaintiff's allegations; and (3) the ALJ failed to properly assess plaintiff's residual functional capacity.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical

REPORT AND RECOMMENDATION - 3

or mental impairment that has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th  Cir. 1999).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  20 C.F.R. §§ 416.920, 404.1520.  This five-step process is summarized as follows.  First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits the claimant's physical or mental ability to do basic work activities.  If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Commissioner will presume the claimant disabled and unable to perform substantial gainful activity.  If the claimant does not have a listed impairment, the fourth inquiry is whether the claimant has the residual functional capacity to perform his past work.  Finally, fifth, if the claimant is unable to perform the claimant's past work, the Commissioner then determines whether there is other work that the claimant could perform. This fifth step of the process is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering the claimant's physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  42 U.S.C. §

REPORT AND RECOMMENDATION - 4

423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Plaintiff has the burden of proof as to the first four steps; the Commissioner has the burden of proof on the fifth and final step. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n. 5 (1987).

## **DISCUSSION**

Plaintiff argues that the ALJ failed to properly consider her testimony and medical evidence regarding alleged severe impairments relating to her hand and arm and to her depression.  The ALJ's concluded that these alleged impairments were not severe at step-two..  Plaintiff claims that she made the prima facie case that these claimed impairments were severe and that because the ALJ never considered these impairments in steps 3, 4 and 5, the matter should be remanded to further findings.  This court agrees.

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe.  20 C.F.R. §§ 404.1520, 416.920 (1996).  The step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform past work.  <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1076 (9th Cir. 2007). . "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir.1996).  A finding that a claimant is severe at step-two only raises a prima facie case of a disability.  <u>Id</u>.  *See also* <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir.1999).

The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe."  According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities,"  20 C.F.R. §§ 404.1520(c),

REPORT AND RECOMMENDATION - 5

404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-28 ("SSR 85-28"). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988)(*adopting* SSR 85-28).

Here, the ALJ found that plaintiff suffers from two "severe" impairments: neck and low back pain. Plaintiff alleges the ALJ should have also considered plaintiff's wrist and hand pain and her depression as "severe" impairments. Plaintiff's Opening Brief (Doc. 10) at 11. Plaintiff presented evidence to show that both of these impairments had more than a minimal effect on her ability to work for more than a twelve month period.After reviewing the record, the undersigned finds the ALJ erred in not including plaintiff's wrist and hand pain and depression as "severe" impairments. In August 2005, plaintiff reported to her treating physician that she was having bilateral wrist pain with activity and that she believed it was related to an on-the-job injury. Tr. 306. The doctor noted a history of chronic wrist tendinitis. Id. Plaintiff participated in occupational therapy for her wrist or hands from August 16, 2005 until January 6, 2006. Tr. 224-48. By November 2005, plaintiff had nineteen visits to Mary Douglas and Dr. Clancy for hand and wrist therapy. Tr. 226. On January 25, the occupational therapist reported that plaintiff continued to have pain in both wrists and she was limited in lifting an 8 ounce weight 10 times with her right wrist and a 1 pound weight 10 times with her left wrist, but not able to push and pull without having increased wrist pain. Tr. 224.

In his report of April 27, 2007, Dr. Brzusek noted that plaintiff suffered from a left wrist sprain and strain, related to an industrial injury on October 6, 2003, as well as a history of a

REPORT AND RECOMMENDATION - 6

series of injuries to her right wrist from on the job accidents. Tr. 364. Plaintiff continued to complain of wrist pain and was seen by Dr. McGovern several times in 2007. Tr. 370-81. On August 16, 2007, Dr. Clancy's office noted evidence of joint space narrowing in an x-ray of her right wrist and decompression of her ulnar nerve and surgical options. Tr. 371. While the ALJ generally noted these impairments, she concluded, without explanation or support, that they were not severe. Tr. 25. The record clearly supports a finding that plaintiff had wrist and hand pain that was severe and more than de minimis. The ALJ erred when she did not include this impairment as "severe" in her analysis of plaintiff's application for benefits. Additionally, with regard to plaintiff's mental impairment – depression, the record again contains significant evidence. Beginning in March 2004, plaintiff's primary care physician, Dr. Clancy, diagnosed depression and prescribed medication for it on an ongoing basis. Tr. 301-16. Dr. Clancy worked with plaintiff's mental health therapist, Ann Colley. On January 6, 2006, Ms. Colley noted plaintiff was currently in therapy to address issues of depression due to limited abilities, chronic pain, and the uncertainty of not knowing how she would support herself. Tr. 222. Treatment for depression had included cognitive behavioral therapy, combined with medication prescribed by Dr. Clancy. Id. Ms. Colley stated that although plaintiff's depression had improved, she was not able to perform work-related activities on a sustained basis at that time. Id.

Dr. Peterson, a psychiatrist, examined plaintiff on March 8, 2006. Tr. 295-99. Dr. Peterson diagnosed a major depressive disorder, avoidant personality, and rated her GAF at 45, indicating severe symptoms. Tr. 298. Dr. Peterson further indicated that plaintiff's emotional functioning was triggered by her physical symptoms and that she would need intensive therapy for the next several years to improve her function even marginally. Tr. 299. Similarly, Dr.

REPORT AND RECOMMENDATION - 7

Regets, a psychologist, reviewed plaintiff's records, and diagnosed a major depressive disorder and avoidant personality. Tr. 136, 140. Dr. Regets assessed plaintiff with moderate functional limitations in her ability to perform activities of daily living and in maintaining concentration, persistence, and pace. Tr. 143. Dr. Regets further noted that plaintiff was moderately limited in the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to respond appropriately to changes in the work setting. Tr. 129-30.

The evidence noted above supports plaintiff's claim that she suffers from depression, which has more than a minimal affect on her ability to work. The ALJ erred when she did not include this impairment as "severe" in her analysis of plaintiff's application for benefitsThe ALJ's error necessitates remand for further consideration of the medical evidence at step-two, as well as evaluation of plaintiff's credibility and residual functional capacity in light of a new step-two finding.

## CONCLUSION

Based on the foregoing, the Court should remand the matter to the administration for further consideration. Also, if plaintiff subsequently seeks an award of costs and fees as a prevailing party, the Court should review the file and consider directing plaintiff to pay the filing fee which was earlier waived in accordance with Local Civil Rule Cr 3(b).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.

REPORT AND RECOMMENDATION - 8

*See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 21, 2010**, as noted in the caption.

DATED this 28th day of April, 2010.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9